801 S.E.2d 431

**VALENTINE & KEBARTAS, INC.,**
**Defendant Below, Petitioner**

v.

**Gary J. LENAHAN, Plaintiff**
**Below, Respondent**

No. 16-0127

Supreme Court of Appeals of West Virginia.

Submitted: January 17, 2017

Filed: June 12, 2017

Albert C. Dunn, Jr., Esq., Bailey & Wyant, PLLC, Charleston, West Virginia, Counsel for the Petitioner

Ralph C. Young, Esq., Christopher B. Frost, Esq., Steven R. Broadwater, Jr. Esq., Jed R. Nolan, Esq., Hamilton, Burgess, Young & Pollard, pllc, Fayetteville, West Virginia, Counsel for Respondent

WALKER, Justice:

Valentine & Kebartas, Inc. ("V&K") appeals the January 15, 2016 Verdict Order of the Circuit Court of Raleigh County. Following a bench trial, the circuit court ruled in favor of Respondent Gary J. Lenahan ("Mr. Lenahan") that V&K violated the West Virginia Consumer Credit and Protection Act ("Act").[1] V&K challenges the circuit court's determination that the volume of telephone calls made by a debt collector to the consumer in this case, absent any other evidence of intent to annoy, abuse, oppress or threaten, is sufficient to establish a violation of West Virginia Code § 46A-2-125(d) (1974). Upon consideration of the parties' briefs and arguments, the submitted record and pertinent authorities, we reverse the circuit court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

V&K is a third-party debt collector who purchased Mr. Lenahan's delinquent consumer account from ADT, a home security system provider. ADT informed V&K that Mr. Lenahan owed $1,349.53 on the account. The facts are undisputed that Mr. Lenahan informed ADT that he denied owing the debt. Similarly, there is no dispute that Mr. Lenahan never notified V&K that he denied owing the debt.

V&K's collection efforts commenced with a March 9, 2012, letter to Mr. Lenahan notifying him of V&K's intent to collect the debt on the ADT account. Mr. Lenahan admitted receiving the letter. Thereafter, V&K made telephone calls to the telephone number provided by ADT for Mr. Lenahan. According to the testimony of Linda Diaz, V&K's Chief Compliance Officer, V&K used a computer referred to as an auto dialer to place the telephone calls.

As Ms. Diaz testified, V&K directs its managers to schedule auto dialer campaigns for selected accounts on a daily basis. The auto dialer is programmed to make telephone calls according to certain parameters such as time of day and number of calls per day or week in compliance with applicable laws.[2] Ms. Diaz further testified that the auto dialer campaigns may be programmed to call during the "prime time" hours of a particular consumer's time zone. Pursuant to V&K policy, managers scheduled auto dialer calls during a consumer's prime time hours all in an effort to comply with the law while maximizing the chances of actually reaching the consumer at a time he or she would be home to answer the phone.

Ms. Diaz further testified that a manager cannot schedule the specific time of a call or calls. The exact time the auto dialer places the calls within the parameters set by V&K is chosen randomly by the computer. In the case of Mr. Lenahan, the auto dialer campaigns were programmed not to leave a message.[3] If the call was answered, the auto dialer was programmed to connect a collection agent with the person answering the call. Mr. Lenahan offered no evidence to contradict Ms. Diaz's testimony regarding V&K's process and procedures.

---

1. W.Va. Code §§ 46A-1-101 through 8-102 (Supp. 2016).

2. Ms. Diaz testified that V&K conforms its practices to federal consumer law. For example, the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 through -1692p (2012) ("FDCPA"), prohibits a debt collector from communicating with a consumer "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a)(1). The statute further provides that

the convenient time to communicate with a consumer, unless established otherwise by the consumer, is after 8:00 a.m. and before 9:00 p.m. local time at the consumer's location. *Id.*

3. The trial transcript contains conflicting testimony about whether the auto dialer left one message over the eight-month timeframe at issue here, but this fact, in itself, is not material to our inquiry. The parties do not dispute that Mr. Lenahan did not answer the call.

The number of telephone calls placed by V&K to Mr. Lenahan is also not in dispute. Between March 10 and 25, 2012, V&K used its auto dialer to call Mr. Lenahan twenty-two times. Between March 26 and 28, 2012, the auto dialer placed seventeen additional calls to Mr. Lenahan. Beginning on March 29 and continuing through November 17, 2012, the auto dialer attempted 211 more calls to Mr. Lenahan at times after 8:00 a.m. but before 9:00 p.m. on various days, never more than six times per day. The parties agree that V&K attempted to call Mr. Lenahan 250 times during the eight-month period between March 10, 2012, and November 17, 2012.[4]

Mr. Lenahan testified that the telephone number provided by ADT to V&K had been his cell phone number for twenty years. During 2011 and 2012, he had encountered significant financial difficulties and was receiving approximately twenty to thirty collection calls each day from various parties. According to Mr. Lenahan, he made a conscious decision during this time frame not to answer the phone if he thought the call was from a debt collector. The facts are undisputed that Mr. Lenahan did not answer the 250 telephone calls placed by V&K, kept no record of those calls, and never contacted V&K by telephone or otherwise to contest the debt.

Mr. Lenahan filed suit against V&K in March 2013. During the bench trial on February 2, 2015, Ms. Diaz and Mr. Lenahan were the only two witnesses who testified. On May 22, 2015, the circuit court ruled in a memorandum opinion that V&K's unanswered telephone calls to Mr. Lenahan violated West Virginia Code § 46A-2-

125(d)(1974). On January 15, 2016,[5] the circuit entered its Verdict Order[6] awarding Mr. Lenahan $75,000 in damages.

In its Verdict Order, the circuit court concluded that the first twenty-two telephone calls to Mr. Lenahan attempted from March 10 through 25, 2012, did not violate West Virginia Code § 46A-2-125. However, the circuit court found that V&K "ramped up its collection campaign" with the seventeen calls placed on March 26, 27 and 28, 2012. As the circuit court explained:

> The Court cannot fathom any possible legitimate purpose that could be served by increasing the volume and frequency of collection calls to a consumer who is known to exercise dominion over the telephone number being called and who has already been informed that [V&K] was collecting a debt by mail. Thus, the only logical conclusion is that [V&K] increased its volume and frequency of collection calls to Mr. Lenahan in an attempt to harass or oppress him into answering [V&K]'s telephone calls.

Thus, the circuit court ruled that beginning with the first call on March 26, 2012, V&K's 230 subsequent unanswered collection calls to Mr. Lenahan violated West Virginia Code § 46A-2-125. The circuit court awarded Mr. Lenahan a statutory penalty of $326.08 per call for a total of $75,000.[7]

## II. STANDARD OF REVIEW

This Court has established the following standard of review following a bench trial:

---

4. Following the 250 attempted telephone calls, the record indicates that three additional phone calls from V&K were answered by Mr. Lenahan on November 17, 19 and 20, 2012. Mr. Lenahan argued at trial that he informed V&K during one or more of these three phone calls that he was represented by counsel. He asserted at trial that one or two of the subsequent calls were made in violation of West Virginia Code § 46A-2-128, which among other things limits a debt collector from contacting a consumer once the debt collector received notice that the consumer is represented by counsel. The circuit court did not rule on this claim and neither party raises it on appeal. Therefore, we need not address the issue.

5. The record offers no explanation for the eight-month delay between the circuit court's Memorandum Opinion and Verdict Order.

6. The Verdict Order incorporated the Memorandum Opinion by reference.

7. The circuit court noted that the minimum statutory penalty of $100, when adjusted for inflation since 1974, would be $475.33. Relying upon Mr. Lenahan's stipulation that in no event would his recovery be more than $75,000, the court assessed a penalty of $326.08 for each of the 230 phone calls for a total of $75,000. The court found that Mr. Lenahan's claims for actual damages, attorneys' fees and costs were moot given the stipulated cap on damages.

"In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus Point 1, *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996).

Syl. Pt. 2, *Timberline Four Seasons Resort Management Co. v. Herlan*, 223 W.Va. 730, 679 S.E.2d 329 (2009). With these standards in mind, we consider the parties' arguments.

## III. DISCUSSION

■ Whether the number of collection calls alone is sufficient to find V&K liable to Mr. Lenahan under West Virginia Code § 46A-2-125(d) (1974) is the issue raised in this appeal and is a matter of first impression. The version of West Virginia Code § 46A-2-125 in effect at the time of the bench trial in this case states as follows:

No debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person to another. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:

(a) The use of profane or obscene language or language that is intended to unreasonably abuse the hearer or reader;

(b) The placement of telephone calls without disclosure of the caller's identity and

with the intent to annoy, harass or threaten any person at the called number.

(c) Causing expense to any person in the form of long distance telephone tolls, telegram fees or other charges incurred by a medium of communication, by concealment of the true purpose of the communication; and

(d) Causing the telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with the intent to annoy, abuse, oppress or threaten any person at the called number.

W.Va. Code § 46A-2-125.[8] We focus our attention on whether the circuit court erred in determining that the volume of V&K's telephone calls to Mr. Lenahan constituted abuse or unreasonable oppression by virtue of "causing a telephone to ring ... repeatedly or continuously ... with intent to annoy, abuse, oppress or threaten" under West Virginia Code § 46A-2-125(d).

Relying solely on the volume of telephone calls placed by V&K's auto dialer to Mr. Lenahan, the circuit court found V&K liable under West Virginia Code § 46A-2-125(d). The circuit court reasoned that V&K "ramped up" its collection campaign beginning with six telephone calls on March 26, five telephone calls on March 27 and six telephone calls on March 28, 2012. Without reference to any evidence other than the number of telephone calls on those three days, the circuit court observed:

The Court cannot fathom any possible legitimate purpose that could be served by increasing the volume and frequency of collection calls to a consumer who is known

---

8. The West Virginia Legislature amended this section of the Act effective June 12, 2015. *See* 2015 W.Va. Acts ch. 63. As a result, subsection (d) now more specifically addresses call volume by prohibiting the following conduct:

Calling any person more than thirty times per week or engaging any person in telephone conversation more than ten times per week, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number. In determining whether a debt collector's conduct violates this section, the debt collector's conduct will be evaluated from the

standpoint of a reasonable person. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after eight o'clock antemeridian and before nine o'clock postmeridian, local time at the consumer's location.

W.Va. Code § 46A-2-125(d) (2015). We decline to consider this amendment because it was not in effect as of the date of the bench trial in this matter. All subsequent references to West Virginia Code 46A-2-125 shall be to the version in effect at the time of the bench trial in this case, which was promulgated in 1974.

to exercise dominion over the telephone number being called and who has already been informed that [V&K] was collecting a debt by mail.

Based on this finding of lack of legitimate purpose, the circuit court concluded that V&K "increased its volume and frequency of collection calls to Mr. Lenahan in an attempt to harass or oppress him into answering" its calls. The circuit court also inexplicably applied its conclusion about the "ramped up" calls on March 26-28, 2012, to the 211 unanswered calls made from March 29 through November 17, 2012.

In support of its conclusion that the alleged "repeated or continuous" call volume is sufficient to prove intent under the Act, the circuit court relied in part upon the decision of the United States District Court for the Southern District of West Virginia in *Ferrell v. Santander Consumer USA, Inc.*, 859 F.Supp.2d 812 (S.D.W.Va. 2012). The *Ferrell* court denied the defendant's motion for summary judgment in a case in which the plaintiffs alleged they received numerous calls after having advised the defendant they had retained counsel regarding a debt owed. *Ferrell*, 859 F.Supp.2d at 816-17. In support of its motion for summary judgment on plaintiff's claims under West Virginia Code § 46A-2-125(d), the defendant contended that there was no evidence that the telephone calls were unreasonably oppressive or abusive or that the telephone calls were placed with intent to annoy, abuse, oppress or threaten. *Id.* at 816. The *Ferrell* court denied the motion and found that there was sufficient evidence to allow a jury to consider the claim.

Petitioner urges this Court instead to rely upon the decision of the United States District Court for the Southern District of West Virginia in *Bourne v. Mapother & Mapother, P.S.C.*, 998 F.Supp.2d 495 (S.D.W.Va. 2014). In *Bourne*, the district court granted sum-

mary judgment to a defendant where there were no facts in the record to support a finding of intent to annoy, abuse, oppress or threaten. *Id.* at 502-03. The defendant law firm hired to collect debts was mistakenly calling the plaintiff regarding a debt owed by the plaintiff's aunt. *Id.* at 499. Coincidentally, the plaintiff also owed a debt being pursued by the law firm. *Id.* Plaintiff never answered the law firm's calls about his aunt's debt, which were placed by the law firm's auto dialer that did not leave messages. *Id.*

Analyzing other cases in the Southern District of West Virginia denying summary judgment on claims under West Virginia Code § 46A-2-125(d), the *Bourne* court observed that the cases "involved many more telephone calls *and* other evidence which suggested abuse." *Bourne*, 998 F.Supp.2d at 502 (emphasis added). For example, the court noted a denial of a motion for summary judgment in *Duncan v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 5359698 (S.D.W.Va. 2011) based not only on the volume of telephone calls, but also on evidence that abusive language was used in at least one of the phone calls. *Id.* at 502-03. The *Bourne* court concluded that "[e]ven accepting that twenty-seven phone calls over the course of eight months at normal times of the day could be considered causing the telephone to ring 'repeatedly or continuously'—a proposition that is highly doubtful—plaintiff has failed to establish that [defendant] intended to annoy, abuse, oppress or threaten plaintiff or anyone else." *Id.* In other words, despite the fact that the unanswered calls might suffice to establish the requirement of being placed "repeatedly or continuously," the phone calls alone were not sufficient as a matter of law to establish intent to annoy, abuse, oppress or threaten in that case. *Id.*

The *Bourne* court further noted that several other courts interpreting 15 U.S.C. § 1692d(5),[9] the provision of the "FDCPA"

---

9. This provision of the FDCPA states:

 A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ....

 * * *

 (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. 15 U.S.C. § 1692d (2012).

nearly identical to West Virginia Code § 46A-2-125(d), have also found that call volume alone absent evidence of other abusive conduct is insufficient to sustain a claim:

> Finally, the cases interpreting the analogous FDCPA provision—*cases which plaintiff encouraged this court to consult*—are even more supportive of defendants' summary judgment motion. These cases generally go as far as asserting that even daily phone calls, without other abusive conduct are insufficient to raise a triable issue of fact for the jury. See Saltzman v. I.C. Sys., Inc., No. 09-10096, 2009 WL 3190359, at \*7 (E.D. Mich. Sept. 30, 2009) ("[A] debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages."); Arteaga v. Asset Acceptance, LLC, 733 F.Supp.2d 1218, 1229 (E.D. Cal. 2010) (finding that "daily" or "nearly daily" phone calls alone fail to raise an issue of fact for a jury to determine whether the conduct violates § 1692d and § 1692(d)(5)); Tucker v. CBE Grp., Inc., 710 F.Supp.2d 1301, 1305 (M.D. Fla. 2010) (noting that despite 57 calls over a 20–day period being "somewhat high," the conduct still did not violate § 1692(d)(5) as a matter of law where defendant left six messages, made no more than seven calls in a single day, and did not call back the same day after leaving a message); Durthaler v. Accounts Receivable Mgmt., Inc., 854 F.Supp.2d 485 (S.D. Ohio 2012) (finding no FDCPA violation even though debt collector made 30 calls to debtor's phone numbers, one of which was made after the debt collector was informed that the number did not belong to the debtor, and two calls to debtor's roommate in 73 day period); Katz v. Capital One, No. 1:09-cv-1059, 2010 WL 1039850 (E.D. Va. March 18, 2010) (15–17 calls, not more than two in a day and not at inconvenient times, after debtor notified debt collector of attorney representation did not violate the FDCPA).

*Bourne,* 998 F.Supp.2d at 503 (emphasis added). As another district court has noted:

> A remarkable volume of telephone calls is permissible under FDCPA jurisprudence. *See VanHorn v. Genpact Servs., LLC,* No. 09-1047-CV-S-GAF, 2011 WL 4565477, at \*1 (W.D. Mo. Feb. 14, 2011) (finding 114 calls in a four-month period did not violate the FDCPA); *Carman v. CBE Grp., Inc.,* 782 F.Supp.2d 1223, 1232 (D. Kan. 2011) (granting summary judgment in favor of a defendant who placed 149 telephone calls to the plaintiff during a two-month period); *Clingaman v. Certegy Payment Recovery Servs.,* No. H-10-2483, 2011 WL 2078629, at \*5 (S.D. Tex. May 26, 2011) (granting summary judgment for a defendant who placed 55 phone calls over three and one-half months).

*Zortman v. J.C. Christensen & Assoc., Inc.,* 870 F.Supp.2d 694, 707 (D. Minn. 2012). Clearly, the weight of federal authority requires some evidence of intent to establish liability under the federal equivalent to West Virginia Code § 46A-2-125(d).

We agree with the reasoning of these federal courts interpreting a nearly identical statute. Despite the fact that the district court in *Bourne* stated that "the requisite intent to annoy, abuse, oppress, or threaten can be established by the volume of telephone calls or the nature of the telephone conversations," [10] the *Bourne* court ruled that the volume of unanswered calls in that case did not establish intent in violation of West Virginia Code § 46A-2-125(d). We similarly find that the volume of unanswered calls in this case does not establish intent in violation of West Virginia Code § 46A-2-125(d). Rather than answer any one of the 211 calls made by V&K in compliance with federal law over eight months, Mr. Lenahan remained silent and never informed V&K of the simple fact that he disputed the debt. Accordingly, we find that the circuit court erred as a matter of law in finding that V&K violated West Virginia Code § 46A-2-125(d).

The circuit court gave no apparent consideration to the unrefuted evidence in the record of V&K's intent in placing the auto dialer calls to Mr. Lenahan. Mr. Lenahan acknowl-

---

10. *Bourne,* 998 F.Supp.2d at 502.

edged in his testimony that he had received a letter advising him of V&K's attempt to collect the ADT debt. According to the trial testimony of Ms. Diaz, V&K continued to call Mr. Lenahan in an effort to collect the debt:

> .... This telephone number [of Mr. Lenahan] was provided by our client in question that we were attempting to collect money owed to a third-party collection agency.

> We received the telephone contacts, we attempted to make the telephone calls with no communication, we attempted to reach out to the consumer, your client, in an attempt to collect a debt, and we were never ever told otherwise. We did not have communication advising do not call this number, do not telephone me at this inconvenient or harassing time or any of that nature so, therefore, the attempted telephone calls continued to make contact.

Similarly, the circuit court made no mention of the unrefuted testimony of Ms. Diaz regarding V&K's procedures to assure that its auto dialer placed calls within established limits as to time and volume in compliance with applicable laws. The record is devoid of any evidence contradicting V&K's stated intention to collect a debt. The calls continued because Mr. Lenahan never answered the telephone calls and never informed V&K that he contested the debt.

Rather, the circuit court made an inference of intent to "harass or oppress" based upon its own inability to "fathom any possible legitimate purpose" for V&K's auto dialer placing more calls over a three-day period in the third week of its eight-month collection effort than it placed in the first two weeks. The circuit court surmised that after a certain amount of unanswered calls, a reasonable debt collector should know that the consumer does not want to be contacted. However, the circuit court's inference was based entirely on the volume of calls and no other evidence. Moreover, the circuit court overlooked entirely the unrefuted evidence of V&K's intent to collect the debt. Accordingly, the circuit court's ruling is deficient as a matter of law. Some evidence of V&K's intent to annoy, abuse, oppress or threaten Mr. Lenahan is

necessary in order to find liability under West Virginia Code § 46A-2-125(d).

 In addition, we note that inquiring into the "legitimate purpose" for placing debt collection telephone calls, and then drawing a negative inference when no legitimate purpose is found, inappropriately relieves the plaintiff of his burden of proof. Relying upon the circuit court's approach, the plaintiff had no burden of proof other than to "perceive" a "ramp up" in the telephone calls, requiring V&K to rebut that perception by justifying the placement of the auto dialer calls. The plain language of West Virginia Code § 46A-2-125(d) does not support this approach; it is the plaintiff's burden to prove intent to annoy, abuse, oppress or threaten.

We further note that Mr. Lenahan's silence alone was insufficient to have imputed knowledge to V&K that it should discontinue the auto dialer calls. Like the ill-advised analysis of whether V&K had a "legitimate purpose" for placing auto dialer calls, it is likewise erroneous as a matter of law to impose a duty on a debt collector to discontinue debt collection efforts based solely on the fact that the consumer does not want to be contacted after a certain period of time that is subjectively known only to the consumer.

Based upon the undisputed facts, there is no evidence that V&K intended to annoy, abuse, oppress or threaten Mr. Lenahan in violation of West Virginia Code § 46A-2-125(d). Accordingly, the circuit court erred as a matter of law in finding in favor of Mr. Lenahan in its Verdict Order of January 16, 2016.

## IV. CONCLUSION

For the foregoing reasons, we reverse the January 16, 2016, order of the Circuit Court of Raleigh County.

Reversed.

JUSTICE DAVIS dissents and reserves the right to file a dissenting opinion.

JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.

WORKMAN, J., dissenting:

Without even attempting to find support in precedent or reason, the majority reverses the trial court's verdict in direct contradiction of a universally-accepted rule pertaining to evidence from which intent may be inferred for purposes of unlawful debt collection practices. The majority's reversal of the trial court further insinuates itself into the purely factual issue of whether a debtor has proven intent relative to a violation of West Virginia Code § 46A-2-125 (1974). What the majority plainly believes, but disingenuously refuses to expressly state, is that call volume and frequency alone is insufficient evidence from which to infer intent for purposes of West Virginia Code § 46A-2-125(d). Despite characterizing this issue as one of "first impression," the majority issues no new syllabus point to this effect, undoubtedly because it flies directly in the face of all written authority and common sense. This extraordinary and stark departure from well-established federal caselaw interpreting our statute's federal counterpart creates an untenable situation where a debt collector's conduct may violate a federal statute, but not its virtually identical state equivalent. Because the majority's position is neither legally nor rationally sound, I respectfully dissent.

The debt collection provisions of the West Virginia Consumer Credit Protection Act's ("WVCCPA") are contained in West Virginia Code §§ 46A-2-122 through 129a. The pertinent provision provides:

No debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:

* * *

(d) *Causing a telephone to ring* or engaging any person in telephone conversation *repeatedly or continuously*, or at unusual times or at times known to be inconvenient, *with intent to annoy, abuse, oppress or threaten any person at the called number.*

W. Va. Code § 46A-2-125(d) (emphasis added).[1] The Federal Debt Collection Practices Act's ("FDCPA") equivalent provision likewise prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). The unmistakably plain language of both statutes clearly permit recovery based solely upon volume and/or frequency of calls placed to a debtor, so long as the fact-finder discerns sufficient evidence of intent to annoy, abuse, oppress, or harass.

Sitting as the trier of fact, the trial court below expressly found that petitioner caused respondent's telephone to ring with the intent to annoy, abuse, oppress or threaten respondent. More specifically, the trial court found that the volume, frequency, and pattern of calls provided sufficient evidence from which it discerned an intent to oppress and abuse as required by West Virginia Code § 46A-2-125(d). As carefully outlined by the trial court, the undisputed evidence establishes that petitioner caused respondent's telephone to ring 252 times over an eight-month period.[2] The trial court observed that after an initial two-week period of reasonable attempts to contact respondent, the petitioner immediately thereafter "ramped up its collection campaign," as follows:

On March 26, 2012, [petitioner] placed six (6) calls to [ ] Mr. Lenahan, three (3) of which were separated by less than an hour. Like the 22 before it, these calls went unanswered. The next day, [petitioner] placed five (5) additional calls to Mr. Lenahan with as little as twenty-eight (28) minutes separating calls. None of these calls

1. The statute was subsequently amended in 2015. In this case, the 1974 version is the applicable statute.

2. In view of the fact that a debt collector may, without violating the statute, make non-harassing telephone contact with a debtor, the trial court found that the first twenty-two calls, placed over a two-week period and which did not ever exceed three calls a day, lacked any intent to harass.

were answered. On the third day, March 28, 2012, [petitioner] again placed six (6) calls to Mr. Lenahan with some calls separated by only thirty-two (32) minutes.

From these facts, the trial court found that petitioner "increased its volume and frequency of collection calls to Mr. Lenahan in an attempt to harass or oppress him[.]"

The majority now reverses that finding and without any regard whatsoever for our standard of review, summarily declares that the call volume in this particular case is insufficient to establish evidence of intent. The majority inexplicably fails to state, as required by our standard of review, that the trial court's factual finding of intent was "clearly erroneous"; rather, it simply urges its disagreement with the trial court and reverses on that basis with no explanation whatsoever as to why the particular call volume and frequency in this case was insufficient to establish a statutory violation.[3] This Court has made clear that "[f]ollowing a bench trial, the circuit court's findings, based on oral or documentary evidence, shall not be overturned unless clearly erroneous[.]" *Brown v. Gobble*, 196 W. Va. 559, 563, 474 S.E.2d 489, 493 (1996). Further,

> [i]t is well settled in this jurisdiction that in a case tried without the aid of a jury, *the trial court*, and not the appellate court, *is the judge of the weight of the evidence.* Actually, in a nonjury trial, the trial judge has usually been regarded as a surrogate for the jury, and his or her findings are accorded corresponding weight.

*Id.* at 565, 474 S.E.2d at 495 (emphasis added). To whatever extent the foregoing was not perfectly clear, the *Brown* Court sought to emphasize the sanctity of the trial court's findings upon a non-jury trial by quipping that "[w]e will disturb only those factual findings that strike us wrong with the 'force of a five-week-old, unrefrigerated dead

fish.'" *Id.* at 563, 474 S.E.2d at 493 (quoting *United States v. Markling*, 7 F.3d 1309, 1319 (7th Cir. 1993), *cert. denied*, 514 U.S. 1010, 115 S.Ct. 1327, 131 L.Ed.2d 206 (1995)). Apparently, however, despite this unequivocal cautionary instruction, the majority sees fit to summarily disregard the trial court's assessment of the evidence and reverse the judgment entered below.

Furthermore, not only does the majority improperly invade the trial court's exclusive province to determine intent in this matter, it completely misrepresents the trial court's support for its findings. Despite the trial court's painstaking and detailed outline of the call activity which supported its conclusion that petitioner was "ramping up" its efforts from which it inferred intent to harass, the majority incredibly claims that the trial court referenced nothing other than the "number of telephone calls on [ ] three days[.]" As is obvious from its order, the trial court considered not mere volume, but rather the timing and repetitive nature of the calls including six calls in a day, with three separated by less than an hour, and five and six calls on consecutive days with such calls separated by roughly half an hour. This unrelenting re-dialing is exactly the type of evidence that other courts have found to be demonstrative of intent to harass. *See Kuhn*, 865 F.Supp. at 1453 (finding six phone calls in a span of twenty-four minutes constituted harassment); *Bingham v. Collection Bureau, Inc.* 505 F.Supp. 864, 873 (D.N.D. 1981) (holding that when call was terminated and the collection agency called back immediately, subsequent call alone could constitute harassment).

More to the point, however, the majority's reversal is obviously based upon its conclusion that call volume alone is insufficient as a matter of law. Throughout the majority opinion, it belabors the lack of additional evidence beyond call volume, stating that respondent

---

3. The majority likewise curiously and tersely mentions that respondent "remained silent" and never advised petitioner "of the simple fact that he disputed the debt." On what basis it discerns a legal obligation on the part of a debtor to speak with a harassing debt collector and affirmatively disclaim the debt, the majority does not state. Despite the majority and petitioner's apparent belief to the contrary, the statute does not require

that the recipient of the calls answer, that the debtor communicate at any time about the debt, or that any particular number, frequency, or pattern of calls exist. Rather, for purposes of this case, the statute unmistakably prohibits the mere causing of a telephone to ring repeatedly or continuously with the intent to annoy, abuse, oppress or threaten any person at the called number.

was "without other evidence," that the trial court "[r]el[ied] solely on the volume of telephone calls," that the "weight of federal authority requires some evidence of intent," that "[t]he record is devoid of any evidence contradicting V & K's stated intention," and that "some evidence of V & K's intent" was necessary. It criticizes the trial court's finding of intent stating that it was "based entirely on the volume of calls and no other evidence." Incredibly, the majority declares that federal caselaw "support[s] the conclusion that call volume alone absent other intent to annoy, abuse or harass is insufficient to sustain a claim[.]" Quite simply, this statement is patently incorrect, as evidenced by a legion of federal decisions and, remarkably, even the very case which the majority cites in support of this statement.

Federal courts have *uniformly* found that intent to harass pursuant to this prohibited debt collection practice may, in fact, be inferred strictly from the volume and/or pattern of the calls themselves. As explained by the Northern District of Illinois:

> Courts have generally considered two types of evidence of an intent to harass. First, where a plaintiff has shown that he asked the collection agency to stop calling or has informed the collection agency that it has the wrong number, and the collection agency nevertheless continued to call the plaintiff, courts have found intent. Second, *the volume and pattern of the calls may themselves evidence an intent to harass.*

*Hendricks v. CBE Grp., Inc.*, 891 F.Supp.2d 892, 896 (N.D. Ill. 2012) (citations omitted) (emphasis added). *See Chavious v. CBE Grp., Inc.*, No. 10-CV-1293 (JS) (ARL), 2012 WL 113509, at *2 (E.D.N.Y. Jan. 13, 2012) ("In evaluating whether repeated phone calls were made 'with intent to annoy, abuse, or harass,' courts generally consider the volume and pattern of calls."); *Lynch v. Nelson Watson & Assocs., LLC*, No. 10-2025-EFM, 2011 WL 2472588, at *2 (D. Kan. June 21, 2011) ("In determining liability, courts often consider the volume and pattern of calls sufficient to raise a triable issue of fact regarding intent to annoy abuse or harass."); *Hicks v. Am.'s Recovery Sols., LLC*, 816 F.Supp.2d

509, 515 (N.D. Ohio 2011) ("[A] court may consider the "frequency, persistence, and volume of the telephone calls" to determine intent[.]"); *Carman v. CBE Grp., Inc.*, 782 F.Supp.2d 1223, 1228 (D. Kan. 2011) ("In determining liability under [the FDCPA] courts often consider the volume and pattern of calls made to the debtor."); *Arteaga v. Asset Acceptance, LLC*, 733 F.Supp.2d 1218, 1228 (E.D. Cal. 2010) ("Calling a debtor numerous times in the same day, or multiple times in a short period of time, can constitute harassment under the FDCPA."); *Pugliese v. Prof'l Recovery Serv., Inc.*, No. 09-12262, 2010 WL 2632562, at *9 (E.D. Mich. June 29, 2010) ("To determine whether Defendants' calls amount to harassment, annoyance or abuse, the volume of the calls must be examined along with the pattern in which they were made[.]"); *Majeski v. I.C. System, Inc.*, No. 08 CV 5583, 2010 WL 145861, at *3 (N.D. Ill. Jan. 8, 2010) ("Actionable harassment or annoyance turns on the volume and pattern of calls made, irrespective of the substance of the messages"); *Bassett v. I.C. System, Inc.*, 715 F.Supp.2d 803 (N.D. Ill. 2010) (finding that volume of calls over discrete period of time sufficient to raise an issue for trial); *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-cv-273, 2008 WL 618788, at *6 (S.D. Ohio Mar. 3, 2008) ("In determining whether the debt collector intended to annoy, abuse and harass the consumer, the Court may consider frequency, persistence, and volume of the telephone calls."); *Kerwin v. Remittance Assistance Corp.*, 559 F.Supp.2d 1117, 1124 (D. Nev. 2008) ("Intent to annoy, abuse, or harass may be inferred from the frequency of calls, the substance of the calls, or the place to which phone calls are made."); *Lovelace v. Stephens & Michaels Assocs., Inc.*, No. 07-10956, 2007 WL 3333019, at *7 (E.D. Mich. Nov. 9, 2007) ("Repeatedly calling a number ... may violate [the FDCPA]."); *Sanchez v. Client Servs., Inc.*, 520 F.Supp.2d 1149, 1161 (N.D. Cal. 2007) ("[T]he frequency and volume of the telephone calls show that defendants intended to annoy, abuse and harass plaintiff[.]"); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F.Supp.2d 492, 505 (D. Md. 2004) ("Whether there is actionable harassment or annoyance turns not only on the volume of calls made,

but also on the pattern of calls."); *Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 238 F.Supp.2d 1158, 1168 (N.D. Cal. 2002) (same); *Kuhn v. Account Control Tech., Inc.*, 865 F.Supp. 1443, 1453 (D. Nev. 1994) (finding harassment where collector made six telephone calls in twenty-four minutes); *United States v. Central Adjustment Bureau, Inc.*, 667 F.Supp. 370 (N.D. Tex. 1986), *aff'd*, 823 F.2d 880 (5th Cir. 1987) (finding harassment based upon four or five telephone calls to the same debtor in one day).

The reasoning behind the federal courts' universal agreement in this regard is obvious. A debtor could scarcely conjure up additional evidence of intent where he or she chooses not to engage an unrelenting and harassing debt collector by answering the phone. Obviously, where a debtor answers any of the collection calls and a debt collector is abusive or threatening, intent is fairly simple to ascertain. However, where the debtor does not answer the calls and the only means of harassing the debtor is the very act of causing the telephone to ring, the only possible evidence of intent that the debtor could produce is the volume, frequency, and pattern of the calls themselves. Without question, the statute prohibits simply "causing the telephone to ring ... repeatedly or continuously" with an intent to "annoy, abuse, oppress or threaten[.]" W. Va. Code § 46A-2-122(d).

In fact, the cases cited by both the majority and petitioner demonstrate that federal courts in West Virginia, interpreting the statute at issue, have applied precisely this rule. Astonishingly, the very case relied upon *exclusively* by the majority expressly contra-

dicts the majority's apparent belief that call volume alone is insufficient. In *Bourne v. Mapother & Mapother, P.S.C.*, 998 F.Supp.2d 495, 502 (S.D.W. Va. 2014) the District Court stated: "The requisite intent to annoy, abuse, oppress, or threaten *can be established by the volume of telephone calls* or the nature of the telephone conversations." (emphasis added). Despite acknowledging this statement in *Bourne*, the majority nevertheless states that *Bourne* cites cases which "have also found that call volume alone absent evidence of other abusive conduct is insufficient to sustain a claim[.]" Not only does this contradict the express language in *Bourne* itself (which language the majority quotes), the *only* conclusion reached in the cases cited or discussed by *Bourne* is that the call volume in those particular cases was insufficient, in the opinion of those courts, to evince an intent to harass.[4] *Nowhere* in those cases do the courts hold that additional evidence was necessary. To the contrary, federal courts have observed that "the nature of telephone calls, including their frequency, substance, or the place to which they are made, provides grounds to infer a debt collector's intent to annoy, abuse, or harass *without any other evidence of the debt collector's motive in calling*." *Brown v. Hosto & Buchan, PLLC*, 748 F.Supp.2d 847, 852 (W.D. Tenn. 2010) (emphasis added); *accord Durthaler*, 854 F.Supp.2d at 489.

Furthermore, the majority makes reference to the *Bourne* court's passing reference to *Duncan v. J. P. Morgan Chase Bank, N. A.*, where additional evidence of intent, *i.e.* abusive language, was presented. No. 5:10-

4. The majority includes a quote from *Bourne* string citing cases where the specific call volume in those cases was insufficient to support a finding of intent. Not only did these cases *not* state that additional evidence was necessary or that the absence of such was dispositive, but the volume described therein does not even come close to approximating the volume and repetitive manner of calling in the instant matter. *See Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359 (E.D. Mich. Sept. 30, 2009) (finding average of one to two calls per day over limited periods of time insufficient volume alone to support violation); *Arteaga*, 733 F.Supp.2d at 1229 (finding that "daily" or "nearly daily" phone calls alone are insufficient to support violation); *Tucker v. CBE Grp., Inc.*, 710 F.Supp.2d 1301,

1305 (M.D. Fla. 2010) (finding average of three calls per day "somewhat high" but insufficient to find violation); *Durthaler v. Accounts Receivable Mgmt., Inc.*, 854 F.Supp.2d 485 (S.D. Ohio 2012) (finding no FDCPA violation where average of one call every two days); *Katz v. Capital One*, No. 1:09-cv-1059, 2010 WL 1039850 (E.D. Va. March 18, 2010) (finding no more than two calls a day insufficient to prove violation). As noted above, on three successive days, petitioner called respondent 5-6 times each day at intervals close in time. Petitioner called respondent 252 calls over an eight-month period and as many as 54 times in a single month. For obvious reasons, the majority undertakes no analysis of the pattern and frequency of calls in this matter as compared with the calls in the cited cases.

cv-010149;5:10-cv-01113, 2011 WL 5359698 (S.D.W. Va. Nov. 4, 2011). The majority emphasizes, without analysis, the *Bourne* court's reference to the existence of additional evidence of intent in *Duncan*. However, the fact that additional evidence happened to exist in that case does not support the majority's illogical leap that the court found such additional evidence *necessary* to find a violation. In fact, the *Duncan* court expressly acknowledged that volume alone can support a violation: "The plain language of [W. Va. Code § 46A-2-125(d) ] aptly sets forth that a statutory violation can be bourne [sic] from the mere volume of calls placed to a debtor."[5] *Id.* at \*4. More specifically, the *Duncan* court correctly noted that "a Court can glean 'intent' from the continuous nature of the calls by highlighting a distinctive pattern, such as the number of calls placed in one day, or the time in which those calls were placed" and expressly declined "to find that 'something more' or a 'volume plus' type of analysis is required to demonstrate a violation of [West Virginia Code § 46A-]2–125(d)[.]" *Id.*

Having established the universally-recognized rule that intent to annoy, abuse, oppress, or harass may clearly be inferred from pattern, volume, and/or frequency of calls, it is equally clear that there is no particular threshold of calls which much be exceeded to violate the statute. Critically, "there is no bright line rule regarding the number of calls which creates the inference of intent." *Hicks*, 816 F.Supp.2d at 515. Accordingly, it is obvious that such an issue is exclusively one for the trier of fact—in this case, the trial court. "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985); *see also Hendricks*, 891 F.Supp.2d at 896 ("Whether or not the volume and pattern of calls is indicative of an intent to harass is often a question

for the jury."); *Pace v. Portfolio Recovery Assocs., LLC*, 872 F.Supp.2d 861, 864 (W.D. Mo. 2012), *aff'd*, 512 Fed.Appx. 643 (8th Cir. 2013) (same); *Carman*, 782 F.Supp.2d at 1230 ("[T]he reasonableness of the volume and pattern of telephone calls is a question of fact best left to a jury."); *Regan v. Law Offices of Edwin A. Abrahamsen & Associates, P.C.*, Civil Action No. 08-5923, 2009 WL 4396299 (E.D. Pa. Dec. 1, 2009) (finding whether pattern of calls was sufficiently harassing was issue for jury); *Akalwadi*, 336 F.Supp.2d at 506 ("The reasonableness of this volume of calls and their pattern is a question of fact for the jury."); *Gill v. Kostroff*, 82 F.Supp.2d 1354, 1360 (M.D. Fla. 2000) ("[T]he inquiry into whether a debt collector's procedures are reasonable is, 'by its nature, fact-intensive, and should therefore typically be left to the jury[.]' " (quoting *Narwick v. Wexler*, 901 F.Supp. 1275, 1282 (N.D. Ill. 1995))). The majority provides absolutely no support whatsoever for its unprecedented conclusion that a certain type of evidence is *per se* insufficient to establish the highly fact-specific issue of intent.

Finally, in its somewhat cryptic closing analysis, the majority discusses petitioner's "stated intention" and "unrefuted evidence of [petitioner's] intent to collect the debt." Although difficult to surmise, the majority appears to be asserting that since petitioner established that its "intent" was merely to collect a debt, rather than to harass, the trial court erred in finding for respondent. The nonsensical and circular reasoning employed by the majority in this regard further illustrates the error of its resolution. Unquestionably, a debt collector accused of violating West Virginia Code § 46A-2-122(d) will *necessarily* be attempting to collect a debt. In fact, attempting to collect a debt is a necessary prerequisite to bringing an action: "[A] threshold requirement for application of [a

---

**5.** *See also Ferrell v. Santander Consumer USA, Inc.*, 859 F.Supp.2d 812, 818 (S.D.W. Va. 2012) (denying summary judgment to debt collector based on "sheer volume of the calls"). I note further that federal district court cases cited by petitioner where summary judgment was granted to the debt collector are plainly distinguishable and/or bear little factual similarity to the case *sub judice*. *See Adams v. Chrysler Fin. Co., LLC*, 2013 WL 1385407 (S.D.W. Va. April 3, 2013)

(granting summary judgment to debt collector where debtor failed to allege any actions prohibited by Section 125(d) and further failed to respond to motion for summary judgment); *White v. Ally Fin., Inc.*, 2013 WL 1857266 (S.D.W. Va. May 2, 2013) (granting summary judgment to debt collector where only evidence of intent was that debt collector was attempting to identify estate representative and stopped calling once information was provided).

debt collection practices act] is that prohibited practices are used in attempt to collect a 'debt.'" *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 88 (4th Cir. 1994). What West Virginia Code § 46A-2-122 and its federal equivalent seek to prohibit is the use of harassing or abusive practices *while attempting to collect a debt*. Therefore, the majority's confounding conclusion that petitioner may evade a violation of the statute by simply claiming that it was merely trying to collect the debt or reach the debtor is fairly absurd and further underscores the majority's complete failure to comprehend the activity which the statute seeks to prohibit.

To be clear, the majority's reversal of this matter is not only without analytical or precedential support, but effectively guts the import of the statute. Under the majority's analysis, a debt collector could conceivably cause a debtor's telephone to ring every five minutes into perpetuity and not run afoul of the statute. In that event, under the majority's analysis, the sheer volume and frequency of the calls are insufficient, without more, to establish intent to harass. What type of "other evidence" is needed or how a debtor could obtain such "other evidence" of intent to harass, the majority does not explain. Rather, it places an impossible burden upon a debtor to adduce "other evidence"—aside from the plainly harassing volume and frequency of calls themselves—of an intent to harass. In so doing, the majority has eviscerated the "causing a telephone to ring" prohibition of subsection (d) in its entirety.

Because this complete departure from the overwhelming consensus of courts addressing this issue is entirely unsupported by the majority's scant and illogical analysis, I respectfully dissent. I am authorized to state that Justice Davis joins me in this dissent.